**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Martial Ledvina, | No. CV-14-01989-TUC-CKJ |
| Plaintiff, | **ORDER** |
| v. | |
| Town of Marana, et al., | |
| Defendants. | |

Plaintiff Martial Ledvina filed this civil rights Complaint alleging constitutional deprivations in violation of 42 U.S.C. § 1983 as well as state-law claims against numerous Defendants. (Doc. 1.) On June 9, 2014, Defendant Sheriff Clarence Dupnik filed a Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6), which Plaintiff opposes. (Docs. 10, 12.) On September 9, 2014, Magistrate Judge D. Thomas Ferraro issued a Report and Recommendation (R & R) recommending that the Motion to Dismiss be granted. (Doc. 19.) Plaintiff filed objections to the R & R, and Defendant has filed a response. (Doc. 27, 28.)

The Court will overrule Plaintiff's objections, adopt the R & R, grant the Motion to Dismiss, and give Plaintiff 30 days to file an amended complaint.

**I.    Governing Standard**

The Court reviews de novo the objected-to portions of the Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for

clear error the unobjected-to portions of the Report and Recommendation. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *See also, Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

## II.     Factual Background and the Report and Recommendation

The action arises from Plaintiff's arrest on January 14, 2013, for alleged domestic abuse and his subsequent one-day confinement in the Pima County Adult Detention Complex (P.C.A.D.C.). On January 7, 2015, Plaintiff stipulated to dismiss the claims against the Marana Defendants—the Town of Marana, Rozeman, and Dittinger; these federal and state claims concerned the arrest. (Doc. 26.) The remaining claims are against Sheriff Dupnik for failure to provide a nurse and Plaintiff's heart medication; these claims include § 1983 claims and state-law claims. (Doc. 1.)

The Complaint alleges that Plaintiff was booked into the P.C.A.D.C. on January 14, 2013, and released at noon on January 15, 2013. At the time of the incident, Plaintiff was an 83-year old man with a heart condition; he alleges he was denied medical attention at P.C.A.D.C. when he advised a Correctional Officer that he had a heart condition and needed a nurse. He did not receive his heart medication until he was released at noon.

Sheriff Dupnik moves to dismiss the § 1983 constitutional claim (Count 1, in part) on the grounds that (1) Plaintiff did not sufficiently allege that anyone at the P.C.A.D.C. acted with deliberate indifference to his serious medical needs, and (2) Plaintiff did not adequately allege that Sheriff Dupnik was personally involved in or sufficiently causally connected to the alleged constitutional violation. (Doc. 10.) All Defendants argue that Plaintiff's state-law claims (Counts 2-6) are time-barred by Arizona's statute of limitations.[1] (Docs. 10, 15.)

---

[1] The R & R observes that Plaintiff's Complaint does little to explain which claims are alleged against which defendant and that "from the parties' briefing it can be surmised that the claims specific to Sheriff Dupnik are an Eighth Amendment Civil Rights violation under Count 1 and Counts 3-6." This Court finds that Count 2—battery, and Count 3—false imprisonment, mention only the conduct of now-dismissed Defendant Dittiger, not Sheriff Dupnik. Indeed, Plaintiff concedes in the Objections that because

- 2 -

1 The Magistrate Judge held that Plaintiff's Complaint fails to allege a constitutional violation because it does not adequately allege the existence of harm, and it does not adequately allege conduct by Sheriff Dupnik connecting him to an alleged constitutional violation. Finally, the Magistrate Judge found that the state-law claims had accrued on January 14, 2013, and were therefore, time barred because the Complaint was not filed until March 27, 2014. (Doc. 19; Doc. 1.)

As to harm, the R & R states that under the applicable standard, a constitutional violation regarding medical care occurs when there is (1) a deliberate indifference to the serious medical needs of a prisoner that (2) results in "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).  Although the Magistrate Judge held that the first part of the *Estelle* test had been met, he also held that Plaintiff has not adequately alleged a harm that satisfies the second part of the *Estelle* test. Noting that a plaintiff need not allege or prove substantial harm, the Magistrate Judge correctly held that alleged indifference to the serious medical need must have resulted in a more than *de minimis* Eighth Amendment harm.  The Magistrate Judge found that the only harm alleged in the Complaint is temporary "anxiety" precipitated by P.C.A.D.C. staff's refusal to provide heart medication in a timely fashion; he did not allege that he experienced any pain, or that he suffered further medical complications due to this anxiety.  Mere delay in receiving treatment or care is insufficient to state a claim unless that delay was harmful. *See Shapley v. Nevada Bd. of State Prison Comm'rs*, 766 F.2d 404, 407 (9th Cir. 1985).

The Magistrate Judge also found that Plaintiff failed to state a claim because he did not adequately allege that Sheriff Dupnik was personally involved in or causally related to the alleged constitutional violation. Plaintiff is suing Sheriff Dupnik in his individual and official capacities. As to individual liability, the Magistrate Judge noted that a "plaintiff may state a claim against a supervisor for deliberate indifference based upon the supervisor's knowledge of and acquiescence in unconstitutional conduct by his

---

the Marana Defendants have been dismissed, the only state-law claims remaining are Counts 4-6.  (Doc. 27 at 5.)

- 3 -

or her subordinates." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011); *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009). A defendant may be liable if: (1) he is personally involved in the constitutional violation; or (2) there is a sufficient causal connection between his conduct and the violation. *Hansen v. Black*, 885 F.2d 642, 646 (9th Cir. 1989).

The Magistrate Judge found that although the Complaint must adequately allege a sufficient causal connection between Sheriff Dupnik's acts and the constitutional violation, Plaintiff's Complaint does no more than state conclusory allegations not entitled to a presumption of truth when considered during a motion to dismiss and it does not offer adequate (or any) factual foundation upon which these conclusions rest. The Complaint baldly alleges that: (1) Defendant maintained polices and/or long standing practices or customs that resulted in the violation of Plaintiff's rights; (2) those polices, practices, and customs were inadequate; and (3) those polices, practices, and customs demonstrated deliberate indifference. (Doc. 1 at 5.) And as to an official-capacity claim, the Magistrate Judge found only bald assertions. He also rejected Plaintiff's argument that he should be permitted to do discovery first.

The Magistrate Judge also found that the state-law claims are barred by the statute of limitations; in Arizona, all actions against public entities and public employees "shall be brought within one year after the cause of action accrues and not afterward." Ariz. Rev. Stat. § 12-821. The parties disputed when the statute of limitations accrued for each claim. The Magistrate Judge held that they all accrued on January 14, 2013, because Plaintiff was present and aware of the injury and by whom it was inflicted.

### III. Objections, Response, and Analysis

#### A. Constitutional Claim

In his Objections, as to harm, Plaintiff argues that his Complaint alleges "much anxiety, "severe emotional distress," "mental distress," and "suffering" and that this psychological pain is sufficient to state a claim. (Doc. 27 at 3.) It appears to this Court that *Hudson v. McMillian*, which is cited in the R & R and which involved use of force, is

1  not relevant to the issue here.  503 U.S. 1, 10 (1992).  In *Hudson* the Supreme Court held
2  that *de minimis* uses of physical force were generally not prohibited by the constitution;
3  on the other hand, the Court held that extent of the inmate's injuries provided no basis for
4  dismissal of his § 1983 claim for excessive force.  *Id.* at 9-10.   In *Oliver v. Keller*,
5  however, the Ninth Circuit held that a claim for a constitutional violation as to conditions
6  of confinement requires a showing of more than *de minimis* harm.  289 F.3d 623, 627
7  (9th Cir. 2002).  The *Oliver* court also construed 42 U.S.C. § 1997e(e), which  provides
8  that a prisoner may not bring a civil action for mental or emotional injury without a prior
9  showing of "physical injury."  The court held that this means that a prisoner may not
10  obtain *compensatory* damages for mental or emotional injury if the "physical injury" is
11  *de minimis*.  But the physical injury requirement applies *only* to claims for mental or
12  emotional injuries and does not bar claims for compensatory, nominal or punitive
13  damages.  *Id.* at 630.  In *Oliver*, the Court determined that even absent physical injury, a
14  prisoner was entitled to seek compensatory, nominal, and punitive damages premised on
15  violations of his Fourteenth Amendment rights.  *Id.* at 629-30.

16  Here, as the Magistrate Judge correctly found, the only harm that Plaintiff alleged
17  that is clearly related to the incident at P.C.A.D.C. is "much anxiety.''  (Doc. 1 ¶14.)  The
18  Court agrees with the Magistrate Judge that, without more, this is *de minimis* harm and
19  fails to state a claim.  The Court overrules Plaintiff's objection.

20  The Court also agrees that Plaintiff's allegations are insufficient to state a claim
21  because they do not tie Sheriff Dupnik's conduct to any alleged constitutional violation.[2]
22  To state a claim against a supervisory official, the civil rights complainant must allege
23  that the supervisory official personally participated in the constitutional deprivation or
24  that the supervisory official was aware of widespread abuses and, with deliberate
25  indifference to the inmate's constitutional rights, failed to take action to prevent further

---

[2] In addition, the Complaint makes no specific allegations against any of the Doe Defendants.

1 misconduct. *See Ortez v. Washington County, Or.*, 88 F.3d 804, 809 (9th Cir. 1996); *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989); *King v. Atiyeh*, 814 F.2d 565, 568 (9th Cir. 1987); *see also Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). Individual liability hinges upon a defendant's participation in the deprivation of a constitutional right. *Larez v. City of Los Angeles*, 946 F.2d 630, 646 (9th Cir. 1991). This participation may involve setting in motion acts that cause others to inflict constitutional injury. *Id.* On the other hand, a suit against a municipal officer or official in that person's official capacity is treated as a suit against the entity of which the municipal officer or official is an agent. *See Monell*, 436 U.S. at 690 n.55; *Kentucky v. Graham*, 473 U.S. 159, 166 (1985). However, although "a municipality can be sued under § 1983, . . . it cannot be held liable unless a municipal policy or custom caused the constitutional injury." *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 166 (1993); *Lewis v. Sacramento County*, 98 F.3d 434, 446 (9th Cir. 1996) *rev'd on other grounds*, 523 U.S. 835 (1998). In an official-capacity suit, a defendant's liability is connected to the entity's policy or custom that played a part in the violation of federal law. *McRorie v. Shimoda*, 795 F.2d 780, 783 (9th Cir.1986).

An unconstitutional policy need not be formal or written to create municipal liability under § 1983; however, it must be so permanent and well settled as to constitute a custom or usage with the force of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 167-68, (1970). And "[p]roof of a single incident of unconstitutional activity is not sufficient to impose liability under *Monell*, unless proof of the incident includes proof that it was caused by an existing, unconstitutional municipal policy, which policy can be attributed to a municipal policy maker." *Oklahoma City v. Tuttle*, 471 U.S. 808, 823-24 (1985); *see Avalos v. Baca*, No. 07-56511 (9th Cir. Feb. 24, 2010) (quoting *Avalos v. Baca*, 517 F. Supp. 2d 1156, 1162 (C.D. Cal. 2007).

In his Objections, Plaintiff again asserts that he should be permitted to do discovery and that "there is a logical presumption that policies exist governing the giving of medication to jail inmates." (Doc. 27 at 4.) While the P.C.A.D.C. no doubt has

- 6 -

dozens of policies and practices, the Court disagrees that the Complaint is sufficient to survive the Motion to Dismiss. As the Magistrate Judge observed, to adequately state an official-capacity claim, a complaint must do more than "simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts." *AE ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012). "Plaintiff's Complaint does no more than baldly assert the elements of such a claim without providing any factual support." (Doc. 19 at 9; ref. Doc. 1 ¶20.)

In fact, the Complaint does not even generally describe the alleged P.C.A.D.C. policy or practice that resulted in Plaintiff not receiving his medication. The Court believes this is a particularly significant deficiency where the allegations of the Complaint show that Plaintiff was at the P.C.A.D.C. for a single day, and he alleges that on the day he did not receive medication, he "observed several inmates going up to see the nurse but, he was never called up." (Doc. 1 ¶14.) In other words, the facts alleged suggest that the policy or practice is to provide health care. As Plaintiff himself notes, the facts alleged "must show that a violation is plausible, not just possible." (Doc. 27 at 4, citing *Iqbal*, 556 U.S. at 678. While Federal Rule of Civil Procedure 8 does not demand detailed factual allegations, "it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*

The Complaint fails to adequately state a claim. But because Plaintiff may be able to amend the Complaint to state a claim, leave to amend will be granted.

### B. State-Law Claims

Plaintiff also objects to the Magistrate Judge dismissing the state-law claims with prejudice, but the argument is difficult to comprehend as it applies to the remaining state-law claims against Sheriff Dupnik. Plaintiff first acknowledges that the claims against the Marana Defendants have been dismissed and that the remaining state-law claims are

- 7 -

1    Counts 4 through 6 (intentional infliction of emotional distress, negligence, and gross
2    negligence). He then argues that

> the actions of the Marana Defendants were a precipitating element of the legal analysis and steps taken by Plaintiff. Specifically, the state law claims of Battery and False Imprisonment, if not legally justified by the Marana Defendants, form the basis of the cause of action against them. . . If the Magistrate's application of the law is correct, and a claim for false arrest and imprisonment accrues on the date of arrest, a person who believes he has been wrongfully arrested would be forced to lodge a notice of claim while the criminal prosecution is ongoing. . . and to plead the factual and legal theories of liability underlying his civil claims, he would have to discuss the facts and circumstances surrounding his prosecution and, in doing so, would waive his Fifth Amendment right not to discuss the criminal case. Requiring the date a cause of action accrues in a civil case where criminal charges were filed against the Plaintiff to be strictly determined to be the date of Plaintiff's arrest would require such Plaintiffs to be unlawfully forced to choose between two fundamental rights.

(Doc. 27 at 5-6.) He concludes that "[a]s it pertains to the state law claims against Defendant Dupnik, Plaintiff maintains that judicial economy and public policy favor the joining of all known and available tortfeasors as defendants in one action and that whenever possible, all claims should be disposed of in one action and that when the cause of action accrues is usually a question for the jury." (*Id.* at 7.)

The Court overrules this objection. The claims against the Marana Defendants have been dismissed by stipulation. And as the Magistrate Judge held, in this case, the dismissal of the criminal charges had no relevance to Plaintiff's knowledge of the alleged damage and cause for the claims against Sheriff Dupnik for intentional infliction of emotional distress, negligence, or gross negligence; the elements for the claims were known to Plaintiff on January 14 or 15, 2013. The Complaint was not filed until March 27, 2014. (Doc. 1.) Thus, the claims against Sheriff Dupnik are barred by the statute of limitations. The Court need not address the findings in the R & R regarding the claims against the dismissed Defendants.

Accordingly,

///

- 8 -

**IT IS ORDERED:**

(1) The Report and Recommendation (Doc. 19) is **adopted**.

(2) Defendant Sheriff Dupnik's Motion to Dismiss (Doc. 10) is **granted**; the state-law claims in the Complaint are **dismissed with prejudice**, and the federal constitutional claim is dismissed with leave to amend the Complaint.

(3) Plaintiff has 30 days from the date of this Order to file a first amended complaint.

(4) Defendants Town of Marana, Rozeman, and Dittiger's Motion to Dismiss (Doc. 15) is denied as moot.

Dated this 2nd day of February, 2015.

_____
Cindy K. Jorgenson
United States District Judge